CONSOLIDATED RY. ELECTRIC LIGHTING & EQUIPMENT CO. v. ADAMS & WESTLAKE CO.

(Circuit Court, N. D. Illinois, E. D.   March 15, 1907.) ·

No. 27,850.

PATENTS—VALIDITY AND INFRINGEMENT—MECHANISM FOR ELECTRIC LIGHTING OF CARS.

The Kennedy patent, No. 740,982, for mechanism for driving dynamos on railway trucks for the purpose of the electric lighting of cars, the essential new features of which are a removable cradle having therein a block upon which the dynamo is pivotally mounted, and which is adjustable to secure parallel alignment with the car axle, covers a combination which is an advance upon the prior art, and discloses invention;  also *held* valid as against the claim of prior use, and the owner held entitled to an injunction to restrain infringement.

In Equity.   On final hearing.

Thomas W. Bakewell, Clarence P. Byrnes, and Edward Rector, for complainant.

Louis K. Gilson, for defendant.

KOHLSAAT, Circuit Judge.   Complainant seeks by the bill herein to restrain defendant from infringing claims 1, 2, and 3 of patent No. 740,982, issued to Patrick Kennedy on October 6, 1903, for mechanism for driving dynamos on railway-trucks, held by it under assignment from the patentee.   The claims read as follows, viz.:

"(1) The combination with a car-truck and a bracket device extended outside of the beams of said truck, of a removable cradle placed between said bracket and an outside cross-beam of the truck, a dynamo within the cradle and adjustably pivoted thereto, a pulley on the armature-shaft of the dynamo, a driving-pulley on an axle of the truck, a driving-belt extended from the driving-pulley to the pulley on the armature-shaft, and means for elastically swinging the dynamo to maintain the tension of the belt, as described.

"(2) The combination with a car-truck and a bracket extended outside of the beams of said truck, of a removable cradle placed between said bracket and an outside cross-beam of the truck, a dynamo within the cradle adjustably pivoted at the bottom thereof, a pulley fast on the armature of the dynamo, a driving-pulley on the axle of the truck, a driving-belt extended from the driving-pulley to the pulley on the armature-shaft, and a compression-spring provided to swing the dynamo to maintain the tension of the driving-belt, as described.

153 F.—13

"(3) The combination with a car-truck, of a bracket-support outside of an outer cross-beam of the truck, a cradle having lugs at opposite sides of its top to rest upon the bracket and the adjacent cross-beam to suspend the cradle in the space between them, and a dynamo pivotally supported at its bottom within the cradle, of a pulley on the armature-shaft of the dynamo, a driving-pulley on an axle of the truck, a driving-belt extended from the driving-pulley to the pulley on the armature-shaft, a compression-spring for swinging the dynamo against the tension of the belt to control said tension, and means for adjusting the compression of the spring, as described."

In substance, they call for a dynamo mounted upon an adjustable pivot and supported within removably attached cradle irons, held in position by lugs resting upon the end truck-beam and the rear cross-bar of a bracket-frame provided for that purpose, together with means for keeping the driving belt taut.

The defendant contends that (1) the state of the art considered. complainant's device discloses no invention; (2) that it was proposed and used by the officials of the Pennsylvania Railroad not less than 18 months before complainant's assignor filed his application for a patent, which he did after obtaining knowledge of such device from said use; and (3) that whatever invention there may be in the patent in suit must, by reason of the prior art, be found in matters of mere detail, not found in defendant's device.

It was not new to utilize the revolutions of railway-car axles in generating electricity for car-lighting purposes. Prior to the issuance of patent No. 699,187 to complainant's assignor herein, on May 6, 1902, dynamos had been located between the cross-beams of the trucks, or suspended from the underside of the car. The first method was objectionable because the dynamo was inaccessible, except by raising the whole car body from the trucks, and because the driving-belt was, by reason of the close proximity of the axle pulley to that of the armature, necessarily made very short, and consequent'y. liable to be displaced and to operate otherwise unsatisfactorily. The suspended method placed too much strain upon the sustaining appliances, and also was apt to disarrange the relation between the elements of the driving device with reference to each other, by unavoidable changes in the alignment of the truck wheels in making curves and the like. The 1902 patent to Kennedy, last above named, calls for "a support for the dynamo outside of the truck composed of side bars made fast at their inward ends to an inward cross-beam of the truck, extended outward over an outboard of the truck and beyond the latter, and thence shaped to form a cage for the dynamo, then inward and back to the truck; means for attaching the said bars to the truck and means for releasing the dynamo in the cage as described." This was the first car-lighting device hung from a bracket and outside of the truck. Kennedy claims that it was subject to too much vibration, tending to loosen the joints and shake the lubricating oil from the dynamo bearings. He sets out that the device of the patent in suit obviates the above defects, and insists that he was the first to place upon the market a practical substitute for the independent motor for car-lighting purposes. The difference between this 1902 patent and the one in suit consists in (1) the form of the outside sustaining bracket; (2) a cradle readily removable without lifting the car body; (3) an ad-

justable block at the bottom of this cradle, upon which the dynamo is pivoted, and which is capable of being moved back and forth to secure parallel alignment with the car axle.

There is nothing new in the bracket of the patent in suit. It is so constructed as to be more unyielding than that in the 1902 patent to rough handling and jolts, by means of braces, edgewise bearing and fastenings, and other well-known devices. Instead of forming a basket, it is carried out beyond the truck much like a bale, consisting of two outward extending arms and a cross-bar, connecting the arms and integral therewith. These, together with the rear cross-beam of the truck, form a square frame in which the cradle is suspended. The lugs of the cradle-irons rest upon the cross-bar of the bracket and the rear beam, respectively; both the forward and rear lugs turning inward, and so adjusted with reference to the opening between the rear cross-bar and cross-beam as to pass between and clear them, permitting the basket and dynamo to drop to the ground. To prevent the cradle-irons from falling out when in use, the lugs of the inward cradle-irons are secured to the rear cross-beam of the truck upon which they rest by nutted bolts. The rear lugs on the cross-bar may, as shown by the drawings, also be bolted thereto. Practically the identical cradle, save that the lugs of the cradle-irons do not turn in the same direction, and that the cradle is not necessarily removable, is found in patent No. 685,516 granted to Kennedy October 29, 1901. That patent, however, was for a dash-pot as an equalizer between the tension spring and the dynamo to offset the excessive rocking of the dynamo. The patentee terms the cradle a "stirrip-frame formed of brackets, H, suspended from the truck frame," and says "all these features are well-known." Thus it appears that the only new features in the device of the patent in suit, as regards the car-lighting art, are the removable cradle. This block is, however, adjustable manually only. It is not automatic. Adjustment is attained by manipulating the end set screws. This adaptability to proper alignment of the dynamo with the car axle is, however, a necessary element in securing reasonably perfect results in generating electricity under the circumstances above considered. It co-operates with the other parts of the device in producing the desired end. No device in the prior art combines all the enumerated elements or accomplishes the same results. The difference is not strongly marked, but it is appreciable. The patent applies to an art which has long attracted attention—one in which slight advances are difficult to attain and much desired. The advance may be but a short one, still no one else has made it. The evidence shows that the device has taken hold of the market and is supplanting its predecessors in the art. Considered apart from all questions of prior use and suggestion, I am of the opinion that claims 1 and 2 of the device of the patent in suit show invention, and that as to those claims the patent should be sustained.

Whether or not claim 3 is valid depends upon the construction to be given to the words, "having lugs at opposite sides of its top * * * as described." From the file wrapper and contents in evidence it appears that original claim 4 of Kennedy's application was rejected by the examiner upon his 1902 patent, numbered 699,187, in which re-

jection Kennedy acquiesced. An examination of claim 3 of the patent in suit discloses no other substantial difference between the latter claim and said rejected claim 4 than the location of the lugs. The words are:

"Having lugs at opposite sides of its top to rest upon the bracket and the adjacent cross-beam to suspend the cradle in the space between said bracket and a cross-beam of the truck."

The removable cradle is an indispensable element of the patent in suit. Claim 4 of the first application was rejected because it did not in terms call for it. In order to obviate the defect, Kennedy made the change above suggested. The specifications and drawings of the patent in suit show lugs so placed as to turn in the same direction; that is, the lugs on the opposite sides of the top of the cradle both turn inward, so that an inward movement locates them both upon their several supports at the same time and an outward movement releases both of them from their supports at the same time, provided they are of the same length, and practically synchronously, in any case. The cradle would be unavoidably removable. In that view of the matter, there would be, under the language of claim 3, a removable cradle, while under the language of original claim 4 the cradle might or might not be removable. Claim 3 in suit, construed to include lugs turning in the same direction, is valid, and should be so construed.

Defendant's supporting device appears to be substantially that of the patent to Newbold, granted August 9, 1904, and numbered 766, 891, except that in the latter patent the cradle-irons are attached rigidly to their rear bearings, and are not removable. Whether defendant's cradle is removable depends upon the length of the supporting lugs, with reference to the spaces between the cradle and its frame. It uses the outward extended bracket-arms, but makes the end cross-bar adjustable and consequently not integral with the arms. This adjustability takes the place of the adjustable block upon which complainant's dynamo rests, so far as its alignment with the truck-axle is concerned. The only movement left to the dynamo case is the rocking motion necessary in keeping the driving belt taut. Moreover, defendant's device, while it uses the cradle-irons for hanging the dynamo, makes no other use of them, but relies upon the removable bearing ends as shown in Newbold patent, No. 759,122, granted May 3, 1904, whereby the dynamo can be repaired without removal from the truck. In this way the armature and other parts of the dynamo may be taken out and repaired without disturbing the other parts. The cradle arrangement is that of the Kennedy 1901 patent, No. 685,516, and prior patents. The lugs of the cradle-irons turn in opposite directions, and, in order to make the cradle removable, there must be play enough between the cradle and its suspension from to permit the release from the latter of one of the lugs, or some other means of effecting the release of the cradle must be provided. The device of defendant is not of itself a removable cradle, and, as to its cradle, comes within the provisions of rejected claim 4 aforesaid. It appears from the evidence that on one occasion defendant's witness, Newbold, at the request of the Pennsylvania Railroad, made one of its cradles removable without

dismembering the bracket frame, but aside from this one instance no removable cradle has been manufactured by defendant. It is a circumstance that the Newbold patent of 1904, which defendant's device follows to a considerable degree, excludes the idea of a removable cradle.

The defendant's device also differs from that of claims 1 and 2 of the patent in suit in the manner of securing parallel alignment of the dynamo with the truck-axle. Both methods accomplish the same result. Both are well-known devices in the car-lighting art for effecting parallel alignment of the dynamo and car axle. In one case the block upon which the dynamo rests is movable within the cradle, carrying the dynamo with it; in the other, the outside bar of the bracket which constitutes also the other rest of the cradle-irons may be moved by driving the bolts which hold it to the bracket arms through elongated slots provided for that purpose, whereby the cradle itself is made adjustable with reference to the parallel alignment of the dynamo and axle. In one case the dynamo alone moves; in the other, the dynamo cradle with its contents. In one case the adjustment device is at the bottom of the cradle; in the other, it is at the top. One is pushed by end screws; the other driven by blows. Kennedy was the first to use an adjusting device in combination with a removable cradle on an outside mounting of a car-lighting device. Under the circumstances, the one would be the equivalent of the other. It will be noted that this feature is absent from claim 3. In view of the fact that defendant did on one occasion employ a lighting device which included all the elements of the patent in suit, and the further fact that, while its cradle is not, per se, adjustable, it yet is so constructed that it readily lends itself to such a construction, it should be restrained from exploiting any car-lighting device which employs a removable cradle in combination with the other elements of the patent in suit.

The claim of prior use and suggestion I do not deem affirmatively established by the evidence. Kennedy was the first to assemble and put in practical commercial shape the various elements of the combination patent in suit. Much should be presumed in his favor under circumstances such as appear in this record.

An injunction may issue restraining defendant from manufacturing, using, or selling the device of the patent in suit, limited as above set out.